Case 1:18-cv-00186 Document 26 Filed on 02/20/20 in TXSD Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
February 20, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE ANGEL GONZALEZ PADRON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 1:18-CV-186 |
| | § | |
| MICHAEL POMPEO, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

Plaintiff Jose Angel Gonzalez Padron seeks a declaratory judgment under 8 U.S.C. § 1503 that he is a United States citizen and entitled to a United States passport. This matter arose after Defendant United States Secretary of State Michael Pompeo denied Padron's passport application, based on a finding that he was not a United States citizen. Padron was not born in the United States, but alleges that he acquired United States citizenship derivatively through his father, Raul Gonzalez, who was a United States citizen.

On January 23, 2020, the Court held a half-day bench trial during which two witnesses testified and the Court admitted numerous exhibits. Having considered the record and the applicable law, the Court finds that Padron does not satisfy the requirements to be a United States citizen.

**I. Findings of Fact**

Padron was born in Mexico in December 1965, the son of Raul Gonzalez and Hipolita Padron. (Joint Pretrial Order (JPO), Doc. 13, ¶¶ 6A, 6C; Birth Certificate, Doc. 22, 4) The parties agree that Ms. Padron was a Mexican citizen and Gonzalez was a United States citizen. (JPO, Doc. 13, ¶¶ 6B, 6D) As a result, Padron can obtain derivative United States citizenship solely through his father.

Gonzalez was born in May 1935 in Eagle Pass, Texas, where he lived until about the age of fifteen, when he moved to Mexico. (*Id.* at ¶ 6B; Birth Cert., Doc. 22, 7; Transcript, 14)[1] The parties do not dispute that Gonzalez lived in Eagle Pass for at least five years of his childhood. (Transcript, 52; 1940 Federal Census Data, Doc. 22, 34–36)

Around the time that Gonzalez moved to Mexico, he began working as a fisherman, specifically on shrimp boats. (Transcript, 29–30 and 40) He remained in this trade for almost sixty years, until his death on a shrimp boat in 2009. (*Id.* at 12) Over those decades, he consistently worked for United States fishing companies, and would depart from and return to Port Isabel or the Port of Brownsville. (*Id.* at 18; Record de Trabajos de Raul Gonzalez, Doc. 22, 56)

Around 1960, Gonzalez met Hipolita Padron in Mexico. (Transcript, 12) She testified that from the time they met, Gonzalez would work on shrimp boats for continuous periods of three to six months. (*Id.* at 17, 43) The shrimp boats he worked on made port in Port Isabel, and would also dock at Galveston and Port Aransas. (*Id.* at 18, 19, 31, 43, and 44) Between shrimping trips, Gonzalez would visit Ms. Padron for one to two weeks, and then return to Brownsville, Texas, to stay with one of his brothers until he began a new fishing voyage. (*Id.* at 20–21, 45) Gonzalez never remained in Mexico for more than a month. (*Id.* at 24–25)

Both Ms. Padron and Gonzalez's brother, Alfredo Gonzalez Cilos, testified that Gonzalez always fished off the coast of Texas and Louisiana. (*Id.* at 13, 22, 29, 31, and 40) But no one communicated with or visited Gonzalez when he was on a shrimp boat. (*Id.* at 22, 52) And both Ms. Padron and Cilos based their testimony about Gonzalez's work on what he or his parents told them; they had no personal knowledge of those trips. (*Id.* at 22, 26, 28–29, 46, 52)

On occasion, between shrimping trips, Gonzalez would perform manual labor while in Brownsville, but these jobs lasted for only about a week. (*Id.* at 27)

---

[1] The bench trial proceedings have not been officially transcribed. For convenience, the Court includes citations to the draft transcript, which is consistent with the Court's recollection of the testimony.

2 / 7

## II. Conclusions of Law

### A. Applicable Standards

Plaintiff brings this declaratory judgment action under 8 U.S.C. § 1503(a), which provides the vehicle for individuals within the United States to challenge the denial of a right or privilege based on the determination of their citizenship. Under Section 1503(a), "[t]he Court must make a *de novo* determination of whether a plaintiff is a United States citizen." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012), *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014) (citation omitted).

"There are two sources of citizenship, and two only: birth and naturalization." *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006) (citations and quotations omitted). In the current matter, Padron claims derivative citizenship, which is a form of naturalization and "is determined under the law in effect at the time of the child's birth." *United States v. Duron-Caldera*, 737 F.3d 988, 990 n.1 (5th Cir. 2013) (citing *United States v. Cervantes-Nava,* 281 F.3d 501, 503 n.2 (5th Cir. 2002)); s*ee also Bustamante-Barrera*, 447 F.3d at 395. The parties agree that the applicable statute for this case is 8 U.S.C. § 1401(a)(7) (1952). (JPO, Doc. 13, ¶ 8F)  That provision, as in effect in 1965, when Padron was born, granted citizenship to individuals born outside the United States, but whose "United States citizen parent . . . was physically present in the United States for ten years before the person's birth, five of which must have been after the parent's fourteenth birthday." *Bermea v. Limon*, No. 1:15-CV-097, 2018 WL 4103011, at *1 (S.D. Tex. July 17, 2018) (citing Section 1401(a)(7) (1952)).

In a Section 1503(a) case, the district court holds a bench trial and weighs the evidence, determines the credibility of witnesses, and resolves conflicting testimony. FED. R. CIV. P. 52(a)(1), (6); *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984). Plaintiff carries the burden of establishing that he is a United States citizen by a preponderance of the evidence. *De*

*Vargas v. Brownwell*, 251 F.2d 869, 871 (5th Cir. 1958) ("The burden of proof is on the claimant to prove that she is an American citizen."); JPO, Doc. 13, ¶ 8G.  Proving a fact by a preponderance of the evidence means showing that the existence of that fact "is more likely than not."  *Matter of Briscoe Enterprises, Ltd. II*, 994 F.2d 1160, 1164 (5th Cir. 1993).  The court must "resolve all doubts in favor of the United States and against those seeking citizenship."  *Gonzalez-Segura v. Sessions*, 882 F.3d 127, 131 (5th Cir. 2018) (quoting *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967)) (quotations omitted).

### B. Application

Applying the applicable standard and legal principles to the evidence admitted at trial, the Court concludes that Padron has not established by a preponderance of the evidence that his father was physically present in the United States for the statutorily required time before Padron was born.  The statute requires that Gonzalez must have been physically present in the United States for ten years, but five of those years must have been after Gonzalez turned fourteen.  The parties agree that Gonzalez spent at least five years in Eagle Pass before his fourteenth birthday.  As a result, this case turns on whether Padron can establish that during the sixteen and a half years between May 1949 (when Gonzalez turned fourteen) and December 1965 (when Padron was born), Gonzalez was physically present in the United States for at least five years.  He fails to do so.

As an initial matter, the evidence at trial does not demonstrate that Gonzalez spent considerable time on Texas soil between 1949 and 1965.  In between his shrimping trips, he would typically spend a week or two in Mexico with Ms. Padron, and a brief period with his brother in Brownsville.  His shrimping trips lasted between three and six months, although Ms. Padron testified that on occasion, they were shorter.  Still, even assuming four shrimping trips per year, Gonzalez would have spent only about four weeks per year in Texas.  Over the relevant

time period, such stays would total only about one year of physical presence on United States land.

Gonzalez spent the vast majority of those sixteen and half years working on a shrimp boat out on the water. For Padron to prevail in this lawsuit, he would have to demonstrate that when Gonzalez spent time on a shrimp boat, he was "physically present" in the United States for purposes of the applicable statute. This analysis depends on two questions:

1. While on a shrimp boat, was Gonzalez in the waters of the United States or one of its states?
2. Is a person on a vessel in the territorial waters of the United States (or one of its states) "physically present" in the United States for purposes of 8 U.S.C. § 1401(a)(7)(1952)?

The Court need not reach the second question if the evidence does not establish an affirmative answer to the first question.

Based on the evidence that the parties presented, the Court concludes that Padron fails to demonstrate that Gonzalez, while working on shrimp boats, was in the waters of the United States or one of its states. Neither trial witness testified as to the specific location of the shrimp boats on which Gonzalez worked. At best, Gonzalez told Ms. Padron and Cilos that the shrimp boats worked off the coasts of Texas and Louisiana. While this testimony shows that the shrimp boats did not travel south into Mexican waters, the testimony does not establish whether the vessels remained in the territorial waters of the United States or one of its states. Given that Ms. Padron and Cilos have no personal knowledge of the shrimping industry, they could not testify as to the specific location of the shrimp trawlers when shrimping.

Padron's counsel requests that the Court take judicial notice regarding the customary practices in the shrimping industry to conclude that the shrimp boats on which Gonzalez worked

traveled within the territorial waters of the Unites States or one of its states.  (*See* Transcript, 59)  The doctrine of judicial notice, however, does not bridge the gap in the evidence.

Under Federal Rule of Evidence 201, district courts can take judicial notice of a "fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction [or] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  Under this rule, courts have taken judicial notice of geographic locations and boundary markers.  *See, e.g., Government of Canal Zone v. Burjan*, 596 F.2d 690, 693-694 (5th Cir. 1979).  And courts can take judicial notice of the location of fixed properties, such as government buildings and institutions.  *United States v. Alvarado*, 519 F.3d 1133, 1135 (5th Cir. 1975) ("[T]he trial judge was warranted in taking judicial notice of immutable geographic and physical facts adjudicated in a previous proceeding."); *Weaver v. United States*, 298 F.2d 496, 499 (5th Cir. 1962).  But courts typically cannot take judicial notice of the location of moving objects or people on specific dates, when such facts could be reasonably questioned and are at the crux of the dispute before the court.  *See, e.g., United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001) (denying to take judicial notice of where a defendant was found because "such a fact may not be one whose accuracy cannot be reasonably questioned") (quotations omitted).  Courts may take judicial notice of facts "generally known within the trial court's territorial jurisdiction."  FED. R. EVID. 201(b); *see Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 282 n.1 (5th Cir. 1984), *aff'd on reh'g en banc*, 784 F.2d 665 (5th Cir.), *cert. denied*, 107 S.Ct. 398 (1986) (taking judicial notice of uniform practices of court personnel).  But the customary practices of shrimp trawlers in the Gulf of Mexico between 1950 and 1965 goes well beyond the generally-known facts subject to judicial notice.

Based on the parameters of Rule 201, the Court declines to take judicial notice of Gonzalez's specific location while on shrimp trawlers.  As a result, Padron does not establish by

a preponderance of the evidence that when Gonzalez worked on a shrimp boat, he was in the territorial waters of the United states or one of its states. This conclusion precludes a finding that Gonzalez was "physically present" in the United States for purposes of the relevant statute.

### III. Conclusion

This case presents a sympathetic situation. The passage of time renders unavailable those witnesses, including Padron's father himself, who could provide highly-relevant testimony. But the Court is bound to consider the evidence as presented at trial and based on the applicable standards. As a result, the Court finds that Padron has not met his burden to show that he is a United States citizen.

Accordingly, it is:

**ORDERED** that Plaintiff Jose Angel Gonzalez Padron's request for a declaratory judgment is **DENIED**.

SIGNED this 20th day of February, 2020.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge